UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re: Case No. 11-32645

EDWARD F. WALTERHOUSE, Chapter 7

    Debtor. Hon. Daniel S. Opperman
_____/

OPINION REGARDING MOTION TO DISMISS PURSUANT TO
11 U.S.C. § 707(a) FILED BY UBS FINANCIAL SERVICES, INC.

This matter is before the Court on the Motion of UBS Financial Services, Inc. ("UBSFS") To Dismiss this Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(a). An evidentiary hearing was held by the Court on October 14, 2011, and post-hearing briefs have since been filed by the parties. The Court heard oral argument on January 23, 2012. The Court concludes that dismissal of this case is not warranted.

I.

The facts are generally undisputed. On May 16, 2008, UBSFS hired Edward Walterhouse ("Debtor") as a stockbroker. On June 2, 2008, UBSFS provided Debtor with a $900,000.00 Employee Forgivable Loan ("EFL"). Debtor executed a promissory note and other loan documents requiring that he repay the full $900,000.00, with interest, upon the occurrence of default. Debtor's termination of employment prior to full forgiveness of the loan was an occurrence of default under loan documents. EFL loan proceeds were delivered to Debtor, and deposited into his UBS Resource Management Account. During the two-week period from June 2, 2008, through June 16, 2008, Debtor paid the following debts and/or made the following

1

purchases: (1) nearly $58,000.00 in credit card debt; (2) $5,700.00 to Brenda Tyler, Debtor's mother-in-law, allegedly in satisfaction of a loan; (3) $235,129.20 on a line of credit held by Fifth Third Bank; (4) approximately $7,700.00 for golf carts; and (5) $1,600.00 to his parents.

During the month of June, 2008, Debtor paid: (1) three mortgage payments to Flagstar Bank; (2) $9,148.00 for replacing the siding on his garage; and (3) over $5,300.00 on miscellaneous transactions of less than $500.00. During this month, Debtor also transferred a total of $550,000.00 out of his UBS Resource Management Account into his JP Morgan Chase Bank accounts. By July 1, 2008, the balance in Debtor's UBS Resource Management Account was reduced to $18,469.40.

On June 26, 2008, UBSFS terminated Debtor's employment because he admittedly misrepresented his educational background on certain pre-employment documents. On June 27, 2008, Debtor transferred $450,000.00 of the $900,000.00 EFL out of his UBS Resource Management Account and into a checking account at JP Morgan Chase Bank.

Debtor subsequently secured a position with Merrill Lynch. Merrill Lynch provided Debtor with an up-front forgivable loan for $536,000.00. On July 3, 2008, UBSFS requested that Debtor repay his $900,000.00 EFL. Debtor rejected UBSFS's request, has made no voluntary payments toward his debt to UBSFS, and refused to voluntarily pay anything toward the debt.

On July 21, 2008, Debtor received payment from Merrill Lynch for $536,000.00, which he deposited into a savings account at JP Morgan Chase Bank. Debtor is still employed by Merrill Lynch. Per his Schedules and testimony at the October 14, 2011, evidentiary hearing, the Debtor continues have funds withheld from his wages to repay the up front forgivable loan, and funds are automatically taken from his wages to pay taxes on the forgiven portion. Debtor

2

11-32645-dof    Doc 91    Filed 02/28/12    Entered 02/29/12 06:45:28    Page 2 of 11

intends to reaffirm the outstanding balance on his Merrill Lynch loan, rather than seek a discharge of this indebtedness.

During the month of July 2008, Debtor paid: (1) $1,600.00 to his parents; (2) over $1,000.00 to have an invisible fence installed; (3) over $5,500.00 for suits at Jos. A. Bank; (4) $2,155.59 in miscellaneous purchases; and (5) made $1,600.00 in ATM withdrawals. Also during this month, Debtor depleted his UBS Resource Management Account balance of $18,469.40.

During the time period from July 21, 2008, to August 21, 2008, Debtor paid: (1) nearly $30,000.00 in unexplained and miscellaneous expenditures; (2) approximately $15,500.00 to lease a Cadillac; (3) over $1,000.00 on clothing; (4) nearly $1,500.00 on travel; and (5) approximately $5,500.00 at Home Depot.

On March 23, 2009, UBSFS commenced an arbitration proceeding against Debtor by filing a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") seeking to recover the $900,000.00 plus interest. Debtor filed a counter-claim against UBSFS alleging wrongful discharge and defamation.

During the months of March through December 2009, Debtor: regularly rented limousines; made tens of thousands of dollars in unexplained and miscellaneous expenditures; spent $41,684.65 on a new Chevrolet Suburban; put an $18,000.00 addition on his garage; spent approximately $11,000.00 to construct a pond on his property; purchased in excess of $8,000.00 in clothing; spent over $5,000.00 on country club dues; purchased thousands of dollars worth of furniture; spent approximately $4,000.00 for the purchase of concert and sporting events; and spent in excess of $6,800.00 on vacations and travel. The concerts, sporting events, and some vacation and travel expenses were primarily for client development and retention efforts.

During the months of January through April 2010, Debtor: continued to employ limousine services; spent $7,000.00 renovating his bathroom; purchased furniture; and made unaccounted for and miscellaneous expenditures in excess of $35,000.00.

During the month of May, 2010, Debtor: paid nearly $4,000.00 in country club dues; spent over $6,000.00 on bathroom renovations; and made in excess of $12,000.00 in unexplained and miscellaneous expenditures. During the time period from June, 2010, to February, 2011, Debtor: spent approximately $18,000.00 to purchase a Cadillac; paid more dues to his country club; spent over $1,000.00 with American Airlines; and made more than $90,000.00 in miscellaneous expenditures.

On December 14, 2010, after a full hearing on the merits, a FINRA Panel of Arbitrators entered an Arbitration Award in favor of UBSFS in the amount of $1 million plus post-judgment interest. Debtor failed to pay the award within thirty days as required by FINRA. On February 11, 2011, as a result of the Debtor's failure to pay the arbitration award in accordance with FINRA rules, UBSFS sued to confirm the award in *UBS Financial Services, Inc. v. Walterhouse*, Case No. 2:11-cv-10580, in the United States District Court for the Eastern District of Michigan ("District Court Case"). A default was entered against Debtor on March 9, 2011, in that case after Debtor failed to answer. On March 11, 2011, the District Court Judge Borman entered a default judgment against Debtor for $1 million.

UBSFS began executing on its judgment on March 28, 2011, and obtained non-periodic garnishments on several bank accounts maintained by Debtor at JP Morgan Chase Bank, as well as on accounts maintained by Debtor with his current employer, Merrill Lynch. On that same date, UBSFS also obtained a periodic garnishment of Debtor's wages from Merrill Lynch. On March 31, 2011, Debtor appeared through counsel in the District Court Case. On April 7, 2011,

Debtor filed objections to UBSFS's garnishments on District Court Case, Docket Numbers 20, 22, 23, & 24. UBSFS responded to the Debtor's objections and a hearing was set by the District Court for May 26, 2011 on District Court Case, Docket Numbers 24, 35, 36, & 38.

Debtor filed for bankruptcy on May 26, 2011, before the District Court ruled upon his objections to garnishment, and Debtor's objections remain unresolved. On his bankruptcy Schedules, Debtor lists unsecured priority debts owing to the State of Michigan and the Internal Revenue Service in unknown amounts, which are dependent upon the UBSFS loans as forgiveness of indebtedness income, as well as general unsecured debt owing to HSBC in the amount of $29.17, and the UBSFS debt in the amount of $1,000,000.00.

II.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

III.

UBSFS's Motion is brought pursuant to Section 707(a). Once a debtor's good faith is put into question, the burden is upon the debtor to prove that the bankruptcy filing was made in good faith. *Industrial Insurance Service v. Zick (In re Zick)*, 931 F.2d 1124, 1127 (6th Cir. 1991) (citing *In re Bingham*, 68 B.R. 933 (Bankr. M.D. Pa. 1987)).

A court may dismiss a case under 11 U.S.C. § 707(a) "only after notice and a hearing and only for cause." 11 U.S.C.A. § 707(a). Section 707(a) lists three examples of "cause": unreasonable delay, nonpayment of fees and failure to file schedules and statements. These examples are intended to be non-exclusive illustrations of "cause." *Zick*, 931 F.2d at 1126. The ability to repay debts may constitute substantial abuse under § 707(b), but alone, cannot

5

constitute cause under § 707(a). *See In re Bridges*, 135 B.R. 36, 37-38 (Bankr. E.D. Ky. 1991). However, bad faith can constitute cause. *See Zick*, 931 F.2d at 1127.

As directed by *Zick*, the Court should review the totality of the circumstances. The relevant factors a court is to consider in making this determination include:

1. The debtor reduced his creditors to a single creditor in the months prior to filing the petition.

2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle.

3. The debtor filed the case in response to a judgment[,] pending litigation, or collection action; there is an intent to avoid a large single debt.

4. The effort the debtor made to repay his debts.

5. The unfairness of the use of Chapter 7.

6. The debtor has sufficient resources to pay his debts.

7. The debtor is paying debts to insiders.

8. The schedules inflate expenses to disguise financial well-being.

9. The debtor transferred assets.

10. The debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors.

11. The debtor employed a deliberate and persistent pattern of evading a single major creditor.

12. The debtor failed to make candid and full disclosure.

13. The debts are modest in relation to assets and income.

14. There are multiple bankruptcy filings or other procedural

"gymnastics."

*In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995) (citations omitted). The *Zick* court further clarified that a:

> [d]ismissal based on lack of good faith must be undertaken on an *ad hoc* basis. . . . It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Zick*, 931 F.2d at 1129 (citation omitted).

More recently, in a case from the District Court for the Eastern District of Michigan, *Rahim v. Pacifica Loan Four, LLC (In re Rahim)*, 449 B.R. 527 (E.D. Mich. 2011), District Judge Cox examined the Section 707(a) issue. In citing the *Zick* and the *Spagnolia* factors with approval, the *Rahim* Court concluded that a bankruptcy court may consider a debtor's "continuing lavish lifestyle" as supporting a finding of bad faith and is part of the court's consideration of the totality of the circumstances in deciding a Section 707(a) motion. *Id*. at 534.

IV.

The Court first finds that the *Zick*, *Spagnolia* and *Rahim* cases continue to provide the standards to apply to Section 707(a) motions. In the instant case, the Court concludes that UBSFS has effectively placed Debtor's good faith in question. The burden has, therefore, shifted to Debtor. The Court will analyze the facts of this case under the *Spagnolia* factors.

>   1.  There is no question that the Debtor reduced his creditors to essentially UBSFS. Debtor's bankruptcy Schedules and his testimony at the October 14, 2011, evidentiary hearing support this factor not weighing in favor of Debtor and in favor of UBSFS.

2.  The Debtor did make some lifestyle adjustments during the months leading to and after his bankruptcy filing. While several of the expenses and items purchased have been attacked by UBSFS as being a continuation of a lavish lifestyle, some of these expenses are required for his current employment as a financial advisor with Merrill Lynch, and the majority have been discontinued. Thus, while this factor was significant in the *Rahim* case, it is not significant here, and, if anything, weighs slightly in favor of Debtor.

3.  There is no question that the Debtor filed this bankruptcy case in response to the District Court Case Judgment regarding a large, single debt. Thus, this factor weighs in favor of UBSFS.

4.  While Debtor did not make efforts to repay the District Court Case Judgment, once entered, he did dispute the validity of the underlying termination, and appears to still dispute it today. Otherwise, Debtor made significant efforts pre-petition to repay all of his other debts and did repay all but the large, UBSFS debt. Thus, this factor weighs in favor of Debtor.

5.  The Court finds that there is no unfairness of Debtor's use of Chapter 7. As supported by his testimony and Schedules, Debtor's assets and income are modest compared to the loan repayment obligation he has to his current employer, Merrill Lynch. Thus, this factor weighs in favor of Debtor.

6.  In light of factor 5, above, the Court finds that Debtor does not have sufficient resources to pay the UBSFS debt as he is financially obligated to Merrill Lynch, and the income is speculative, at best. Once again, this factor weighs in favor of Debtor.

7.  While Debtor did pay debts to family members or insiders in the months prior to his bankruptcy filing, it does not appear he is currently doing so. This factor weighs in favor of Debtor.

8.  The Schedules do not appear to inflate expenses to disguise Debtor's financial well-being. This is supported by Debtor's testimony at the October 14, 2011, evidentiary hearing. Thus, this factor weighs in favor of Debtor.

9.  There is no testimony or other evidence that Debtor transferred assets.

UBSFS did produce evidence that the Debtor transferred some property to his brother, but that transfer was in the context of payment of certain expenses of the Debtor's parents. This factor is neutral, with slight weight in favor of Debtor.

10. After considering Debtor's testimony at the evidentiary hearing in this matter, the Court finds that Debtor is not over-utilizing the protection of the Bankruptcy Code to the unconscionable detriment of creditors, which weighs in favor of Debtor.

11. The Court is not satisfied that Debtor employed a deliberate and persistent pattern of evading a single major creditor–here, UBSFS. Debtor disputed the UBSFS debt through various legitimate and recognized means, and was at the point of garnishment and potential loss of his home and other assets to support his family when this bankruptcy was filed. This cannot be considered to weigh against Debtor.

12. The Debtor did fail to make candid and full disclosure as to some items and assets initially, which weighs against Debtor, even though his testimony at the October 14, 2011, evidentiary hearing clarified most of the payments and other transactions described above. This factor weighs in favor of UBSFS.

13. Debtor's debts are modest in relation to assets and income. This weighs in favor of Debtor.

14. There is no evidence of multiple bankruptcy filings or other procedural "gymnastics," which favors Debtor.

The facts in the instant case are different than *Rahim*. In *Rahim*, the Debtors were medical doctors, who incurred significant debt, often for luxury items, and then filed bankruptcy. The Court in *Rahim* noted that modest belt tightening by the Debtors with their current income would have resulted in a substantial payment to unsecured creditors. In this case, Mr. Walterhouse does not enjoy the income of the *Rahim* debtors, and his expenses are modest in comparison. For example, the *Rahim* debtors made a $29,000 down payment on a 2010 BMW vehicle a couple of months before they filed bankruptcy, while Mr. Walterhouse financed a 2006 Cadillac after the lease expired.

9

The Court does hesitate to deny the instant Motion, given some of the unexplained expenses of the Debtor and certain expenses that seem extravagant at first blush. While acknowledging these concerns, the Court also must note that the Debtor had to continue his marketing efforts with his clients, a task made more difficult by the termination of his employment with UBSFS and by the corresponding suspicions many of his clients had by his termination. Moreover, the Debtor incurred many of these expenses while believing, albeit incorrectly, that he was wrongfully terminated by UBSFS and that he would be entitled to damages or an offset.

In particular, *Zick* directs this Court to dismiss cases only in egregious situations where a debtor has concealed assets or income, continued excessive expenditures to continue a lavish lifestyle, and with an intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence. In this case, the Debtor has not acted to the standards imposed by *Zick*, for purposes of this Motion, which is a request for dismissal, a drastic remedy.

Upon a review of the totality of the circumstances, the above fourteen factors, with special consideration given to the *Rahim* Court's caution against a perpetuation of a lavish lifestyle, the Court concludes that Debtor has met his burden in establishing that his bankruptcy filing was made in good faith. The majority of the above factors support Debtor.

The Court has also considered the Trustee's report to it at the October 14, 2011, evidentiary hearing that this bankruptcy estate currently has $70,000.00 collected, as well as the total potential for approximately $200,000.00 total (not including some potential preference actions the Trustee's counsel referenced at the hearing) to be distributed for the benefit of creditors, which creditor body does consist of almost exclusively UBSFS. Thus, the Court does

10

consider the potential for payment to UBSFS through administration of Debtor's bankruptcy case, rather than through other collection means outside of bankruptcy, an independent and relevant factor impacting the Court's decision with regard to this Motion To Dismiss.

With this conclusion, this Court also limits the potential ramification of its findings and conclusions in this case. The issue before the Court is strictly the dismissal of this Chapter 7, and does not include any finding or determination of any other issues, such as whether the debtor is entitled to a discharge, or whether a particular debt is excepted from discharge. Any extrapolation of the decision in this Opinion to those issues would be unwise. Instead, as directed by *Zick*, the relief requested of dismissal is confined.

The Motion of UBSFS To Dismiss Debtor's Chapter 7 Bankruptcy Case Pursuant to 11 U.S.C. § 707(a) is, accordingly, DENIED. Debtor shall prepare and submit an appropriate order.

Not for Publication

**Signed on February 28, 2012**

       **/s/ Daniel S. Opperman**
       **Daniel S. Opperman**
       **United States Bankruptcy Judge**